Next case is Hansen v. Intl Union of Painters and Allied Trades Industry Pension Plan. Mr. Berman Good morning, Your Honors. My name is Kenneth Berman. I represent the appellant Norman Hansen, and I would request to reserve three minutes for rebuttal. Granted. On Friday, Your Honors, I received a letter from the clerk of the court directing that the parties should be prepared to address two cases, Michael's Corp. v. Central States Pension Fund and Mora v. Construction Laborers, and also Article 7, Sections 3 and 5 of the trust. And I thought I would start with that because obviously it's on the court's mind and the cases deal with important issues that are essential to the appeal. Okay. The Michaels case. This case touches on the interpretation of the collective bargaining agreement. It's a 2015 case from the Seventh Circuit, and the relevant subject is the standard of review. In both the appellant's brief and the appellee's brief, counsel break down the standard of review into two categories, one for the contract interpretation of the collective bargaining agreement, which is the de novo standard, and then the benefit determination is the deferential, arbitrary, and capricious standard if the plan grants discretionary authority to the plan administrator. And if you look at Hansen's brief on page 16, I cite the M&G Polymers case. It's a Supreme Court case in 2015. And that lays out the basic criteria that the court has to interpret collective bargaining agreements and pension plan documents according to ordinary contract principles when they're not inconsistent with federal labor policy. And you have to read a contract as a whole and give meaning construed according to the plain language. So the Michaels case gives the same quote in the opinion that I quoted in Hansen's brief. And the Michaels court states the exact same criteria. And then the Michaels decision goes on and cites the Cotillion case, which is a Third Circuit case from 2015. Which I also cite in Hansen's brief. And the analysis in the Michaels case basically said if the court had to decide, they would be inclined to say that the scope of review is de novo and the collective bargaining agreement is outside the scope of the plan. But in the end, it doesn't matter. And I make the exact same argument in Hansen's brief. Because even under the arbitrary and capricious standard, under the Cotillion case from the Third Circuit, the interpretation cannot controvert the plain language of the document. And the Michaels case was one of those cases, and so was Hansen. That's the exact point that I make. That the crux of the problem is that the trustees, after remand, and the district court ignored a key provision from the collective bargaining agreement and rendered it meaningless. That's a fundamental contract principle. Do you agree if we're looking just to the terms of the plan, where the trustees, as I think you acknowledge as well, do have discretion and our case law indicates we do give some deference to their interpretation? Yes. That if we're looking to the definition of covered employment, that by its terms, that would not sweep in the workers' comp and unemployment benefits. Yes. We need to rely on the collective bargaining agreement. Yes, I totally agree with that, Your Honor. And it also wouldn't sweep in the vacation payments by its terms, right? Well, yes, and that's the problem here because the plan itself is silent on what hours have to be counted. And that was, in Judge Kelly's remand opinion, what he found was arbitrary and capricious in the original determination that the trustees said, well, we just don't count these additional hours without reference to the collective bargaining agreement, which was not part of the record at that point. And that was the exact problem, that the plan itself is silent on what hours need to be counted. So therefore – Right. So let's look at the CBA, then. Right. And let's say you prevail on hours of service. Yes. You still have to prevail on covered employment, correct? Yes. All right. Now, why should we say that the benefits that your client received from the government through unemployment compensation and workers' comp was paid in accordance with the agreement? Yes. There's nothing in the agreement that I saw requiring those funds to be paid. Rather, those funds were paid through the state, through the government. Yes. Well, I would say two things. In the briefs, both parties cite the provisions of the collective bargaining agreement, which require the employers to maintain workers' compensation and unemployment compensation benefits. And those benefits are paid by third parties. The – I'm sorry, I just lost – No, I think you're on to the critical point, which is you've identified the obligation to maintain workers' comp insurance, unemployment comp insurance. Yes. But what I'm struggling with is how does that requirement that the employer maintain the insurance translate into those benefits being paid in accordance with the agreement rather than being paid in accordance with state and federal law? Right. That's where Section 13.14.3 of the collective bargaining agreement kicks in. Without that, I think the trustees are correct. The plan itself, if you just look at the plan and the trustees did that time and again and so did the district court, it doesn't really answer the question. Well, doesn't that – doesn't the plan document actually exclude workers' comp and unemployment comp? No, I don't think so. And the plan specifically adopts the Department of Labor regulation, which is dealt with in the Mora case, I think. And it incorporates the collective bargaining agreement. And this language is problematic for the trustees because Section 13.14.3 goes – fills in the gap. Can I go back to my question? Yes. AP236, under the definitions section of the plan, where they're defining hours of service, doesn't it actually say that hours of service does not include payments made for the purpose of complying with workers' comp and unemployment comp laws? Oh, yes. I believe Judge Kelly dealt with that in the opinion before the remand. Obviously, this plan is not maintained to provide those type of benefits, so the exclusion doesn't apply. And I believe Judge Kelly had an extensive footnote on the subject, and he determined that the Department of Labor regulation, which is adopted by the plan, controls. So getting back to the other question, I think, from Judge Cross and Judge Hardiman, I think the problem is that the trustees and the district court ignore this provision in the collective bargaining agreement, which has language that is being ignored. And the crux is – When you say this provision, you're talking 13.14.3? Yes. Right, but that also says in accordance with the agreement. That's why I asked that question. Yes, and that's where the district court's analysis stopped. But then they ignore the last clause of the provision, which says, shall be counted as hours for which contributions are payable. So you've got this category of other hours for which pay is received in accordance with the agreement. That's workers' comp, that's unemployment comp, and that's vacation pay. And Section 13.14.3 then adds this requirement that you have to count those hours, even though there have not been contributions by an employer to the plan per se. These are other hours where no contributions were made, and those hours have to be counted as if they were hours for which contributions are paid. That's what has been overlooked. That is the crux of the error. Oh, at least for LMCI, right? LMCI, I'm not sure what you're referring to. Well, 13.14.3, by its term, seems to apply to the International Union of Painters and Allied Trades Labor Management Cooperation Initiative. Not the fund that we're dealing with here. Oh, I see. The plan is broken down and has different sections. Is that what you're referring to, Your Honor? There's a section that covers the vacation trust, et cetera. But no, I think that this section applies to the entire plan. And how is that, given that it's under the heading of 13.14, which applies to the cooperation initiative, and that the provision that you're referring us to follows something that says that for that fund, each employee covered by this agreement receives payments as follows. And this is one of the ways that those employees, under that cooperation initiative, are to be paid. Let me just take a look, Your Honor. I want to see the – I think it's Article 13 that we're referring to here. This is at AP 428. Article 13 is titled Various Funds. And this is what I was referring to earlier. Article 3 lists these various funds, 13, the health and welfare fund, the annuity fund, the vacation fund, and et cetera. It says that 13.14.3 changes the eligibility requirements for benefits for the International Painters and Allied Trades Industry Pension Fund. But the provision you're referring us to falls under the cooperation initiative, specifically under the cooperation initiative section, and says that employers agree to make payments to that fund as follows. And that's where 13.14.3 comes in. How does that apply to the pension plan here? I see what you're saying, Your Honor, that the section 13.14.3 falls under this heading. I don't think this means that it's exclusive to that initiative. I would argue that this fills in the gap that has – that is – the plan is silent on when you just look at the definitions. The scheme of the definitions of hours of employment and covered employment, I believe this section explains the plan provision which adopts the Department of Labor regulation. And I believe that is the subject of the MORA decision that the court asked me to address. The MORA decision relates to vacation pay. Before you move to vacation pay, I'm still not following how this provision that by its terms applies to the LMCI, the cooperation initiative, you're saying changes the eligibility requirements for a different fund. A different portion of the fund. The vacation fund is part of the pension fund. There are different aspects of the fund dealing with different benefits. But I don't believe there's separate – completely separate entities that don't refer to each other. We did ask you to address MORA and particularly as to vacation pay. Yes. Where it seems to echo the views of the district court here, that is, the Ninth Circuit rejecting double-counting based on the Department of Labor regulation and also based on the observation that those payments to the fund are not made on account of time during which no duties were performed. Yes. They're payments that are made for service that was rendered, and it's an extra dollar going to a vacation fund not paid into the pension fund, but rather paid as a lump sum to the employee. Yes. So are you asking us – is there a way that you're distinguishing MORA or you're suggesting that we should split from the Ninth Circuit?  First of all, the MORA case, the plan had the same 1,000-hour eligibility rule, but there was an undisputed declaration that the intention of the vacation trust was a savings vehicle and was never intended as a fringe benefit for vacation. That's an important – a critical distinction between the Hansen case. And second of all, there's a dissent which focuses on the issue of whether payments from the vacation trust were in the nature of a traditional paid vacation or if it was more in the nature of a voluntary savings plan. And because the vacation benefit was always labeled and identified as a vacation, then it should be treated like a paid vacation. And interestingly enough, Judge Yon, here from our own Eastern District, wrote an opinion three years later in Anderson v. Bakery and Confection Union Pension Fund where he cited MORA. And it's the same situation dealing with the scope of the Department of Labor regulation that's incorporated into the plan. And interestingly, Judge Yon applied the de novo standard in reviewing the collective bargaining. And in that case, the appeals committee decided that the settlement payments were based on longevity and not layoffs. So once again, Judge Yon inquired into the nature of the benefit to determine and interpret the contract. And that's what I've asked you to do here. I've asked you to look at this vacation pay, which is cited in the briefs as a fringe benefit that's paid on account of hours actually worked. And therefore, it's in the nature of a fringe benefit that has to be counted. It has to be counted once, not twice. Yes. Well, if it's a paid vacation, then they have to give credit for the hours. If it's part of the wages that are already counted, no. Then you don't count it double. But what Judge Yon was saying in Anderson and what the Ninth Circuit said in MORA and the dissent is you have to look into the nature of what that benefit is when you're interpreting the contract. All right. So to Judge Krause's question, when you're citing MORA's dissent, you're saying that we should follow the guidance in the dissent and disagree with the – Yes. Okay. Yes, and Judge Yon. Okay. Why didn't Mr. Hansen wait until he was 50 to apply for disability? Well, he was hurt on the – oh, I'm sorry. Why did he wait? Wait. Well, in the workers' comp arena, apparently there's a presumption as you get older, it's harder to return to work. And so rather than litigate, even though he was hurt and he would have qualified, he would have had plenty of – way more than 1,000 hours. That's why I asked. Yes. He made a determination with his workers' comp lawyer to stipulate that his date of disability was his 50th birthday because that made that workers' comp decision. He didn't realize the implication that would have for losing his pension rights because he would have been way over 1,000 hours. And in all fairness, though, I've discussed this with opposing counsel, and I couldn't backtrack and raise that issue. I would have liked to have raised that issue and say, oh, you know, he really – it's unfortunate that that decision was made because we wouldn't be here. There would be no question he had more than 1,000 hours. And the timing was so bad because he got hurt the first week of January. So he only had 88 hours in that year. I would like to be able to argue that. But he really – unfortunately, that really hurt him in the pension case. And, you know, now we're dealing with, does he have 1,000 hours? Do you have to count the additional hours, you know, for vacation, unemployment, and workers' comp? All right. Thank you, Mr. Berman. We'll hear you on rebuttal. Ms. Snyder? Snitter. Snitter. I'm sorry. Good morning, Your Honors. Judith Snitter on behalf of the Appellee's International Painters and Allied Trades Indian Pension Fund and the Board of Trustees. The trustees determine eligibility for benefits under the plan. In this case, they reviewed the CBA in order to make that determination of Mr. Hansen's eligibility and found that workers' comp, unemployment, and the vacation hours were not covered employment. Judge Kelly reviewed the trustees' decision and reviewed the terms of the CBA in his decision and ultimately agreed with them. We don't dispute that the review of the CBA is not allotted the deferential review standard. Review like other contracts. Correct. Okay. De novo review as a contract. But the plan interpretation is arbitrary and capricious. Yes, Your Honor. Okay. And that the CBA withstands a de novo review in supporting the decision of the trustees. What's your position on Judge Krause's question about the applicability or inapplicability of 14-13-3? I think it is. The CBA section is clearly headed as LMCI, and our position is that that term is specific to LMCI. Did you argue that in the district court? No. It had been misreferenced throughout, but it was in our brief noted that it was limited to that. Even the language of it, however, says that for each hour worked, including hours attributable to show-up time and other hours for which pay is received by the employee in accordance with the agreement, shall be counted as hours for which contributions are payable. In this case, the contributions, we would argue that that does not support additional credit to Mr. Hansen anyway, but that section, going through all of Article 13, there are individual headings for each of the fringe benefit funds that the employers agree to make contributions to under the terms of the CBA. I'm not sure I understand the full import of that. Are you arguing that it only applies to the LMCI? It only applies to LMCI. All right. But you didn't raise it below, so do we have a forfeiture issue on that? I guess your fallback position is it's immaterial. That is true. The benefit did apply here. You're saying these payments weren't made in accordance with the agreement  Correct. Those are not wages payable by the employer. I assume you've also argued that we can affirm on any basis, and that language of the collective bargaining agreement clearly limits it to LMCI, that that may be a basis for us to affirm. Yes, Your Honor. What about the fact that 13.14.3 begins with the phrase, for purposes of this article, which seems to be a general reference to Article 13, which would cover this fund as well? And I go back to, as I previously stated, the fund's position is that the language of 13.14.3, even if it were to be applied, would not result in additional hours of covered employment to be credited to Mr. Hansen, which is what is required by the plan document for eligibility for a disability pension benefit. Because there are no hours of pay received by the employee in accordance with this agreement. The agreement requires pay for hours worked. Well, this provision says that you deem them as such, right? Even if it's not actually paid. So if it does apply to the entire article, if for purposes of this article means Article 13 in its entirety, then does that deeming provision apply to you as well? I don't believe it does. But under that, the only additional credit that Mr. Hansen would be entitled to would be under the vacation. There is not a fund for unemployment or workers' comp in Article 13. And under the regulations that Mr. Hansen cites in his briefs, the vacation benefit would result in a maximum of an additional 26 hours of pay. The amount of the benefit, which was $822, were divided by his wage rate at the time, which still leaves him short of the 1,000 hours required in the two years prior to the date of disability for eligibility. Well, I understand the vacation fund payment. It's a separate issue. But here, can we just go back? What should we make of the language for purposes of this article? Does it cover all of Article 13 in terms of how the contributions are deemed? I would argue that under a simple or contract interpretation, the individual headers would limit this to LMCI. Elsewhere, where there are references to particular provisions like 13.8 or 13.1, the agreement specifically identifies them as such. It doesn't talk about the article generally. Right? That may be correct, Your Honor, for each of them. I ask because if this language as to these hours being deemed payable does apply to the fund, then aren't we back to within the definition of covered employment that these become hours of service for which an employer is obligated to make contributions, albeit the obligation to make contributions being one that is so deemed by virtue of 13.14.3. But the actual definition of hours of covered employment in the plan document is simply the relevant subsection being A, hours of service for which an employer is obligated to make contributions to the plan or the trust for credit to the plan. The actual requirement to the plan is that the contributions are required by the terms. I do not believe that the deemed argument extends the obligations of the employer for additional contributions. Going to a few of the points that Mr. Berman had raised was just to clarify that the vacation fund is not part of the pension fund. They are two separate entities. The vacation fund is a local fund. The pension fund is a national fund. It is a separate, distinct legal entity maintained by the local union or its own board of trustees. The other important point going to the vacation hours is the acknowledgement in MORA regarding the prohibition against double counting. Even in the dissent, which Mr. Berman refers to, when it goes into the regulation for the hours of service vacation, it references the calculation whereby the amount of the benefit is divided by the wages. In this case, the double counting issue is clearly prohibited by the regulations. If there were an obligation for an additional amount of credit to be given, then you would divide by the hours. That is what I wanted to get at. Before, when you mentioned dividing the hourly rate into the 822, I was a little surprised at that because I thought you were going to argue that we should not do that because that would violate the rule against double counting. It would. That is your argument. You are making the fallback argument. If you are wrong about that, you do not get credit for the full 822. You have to do the division. Correct, Anna. Okay. Can you clarify? Because that division, there are two different provisions in the regulation, and you are relying on the one that applies to payments not made on the basis of units of time. But where these are made on the basis of units of time, that is by hour, why wouldn't we view this as $1 per hour? The dollar per hour is the rate at which the contribution is paid by the employer to the fund. The benefit to the employee when it is paid is simply paid as a benefit. The employee, to my understanding, would not take off 822 hours in a worst-case scenario. I understand that, but if we got to the point of looking at that $1 as contributions to the fund that were being counted as covered employment, then in terms of the methodology for identifying the number of hours, wouldn't we be looking at a rate of $1 per hour rather than his regular hourly rate? I'm not saying we get to that point, but if we did, I'm not sure I follow why, given the two different options that are provided in the regulation, this, by way of the examples that are given, doesn't fall in the $1 per hour approach, since it is based on units of time, that is, it's a $1 per hour. The examples in the regulation are dealing with lump sum rather than a per hour unit, like this contribution here. And I think here, the hours of services, the examples going through the regulation, detail someone who has an hourly wage and receives a benefit, which seems the most analogous to this, who has a vacation benefit. And in those examples, the methodology used is to divide by their hourly wage to determine any hours due. Your primary argument is it's simply double-counting in violation of the regulation? The general position, I'm sorry, the fund's position is that, in fact, it would be double-counting, considering this benefit only exists because a participant works certain hours, the employer pays contributions to a variety of funds, including the vacation fund and the pension fund, and those hours have been counted when worked and paid. What about your colleague's argument that this is different than MORA because here it's a fringe benefit, you need to look at the nature of the benefit that's being provided? In the actual language describing the vacation benefit in the collective bargaining agreement, it's not clear that that distinction as to a benefit holds. It's a general description of a donation of such deduction to the pay envelope, or I'm sorry, shall deduct the sum covering the vacation fund, and this is on AP444, to the fund, and these deductions and payments are not applicable to overtime work, shall be paid in accordance with Article 13. It is under the fringe benefit. It is a fringe benefit. I don't know that that distinction changes the interpretation of the plan, the CBA, or the regulations regarding hours of service. Okay. Thank you. Anything else? No. All right, thank you, Ms. Snider. We'll hear a rebuttal from Mr. Berman. Thank you, Your Honors. I have two points. Excuse me. Judge Krause's question seems to be an important issue on your minds. Whether the Section 13.14.3 applies just to that one section or not, I think when you look at the language Your Honor pointed out, the introductory clause says for the purpose of this article, article is capitalized. Clearly it's referring to Article 13, not just the LMCI fund. I think it's important that this issue was not raised in the district court, and it is waived. Well, we can't affirm for any reason. No, I would go beyond that. Your fallback position is, well, it's immaterial, and even if it applies here, it doesn't result in the desired additional hours, because you go back to the definitions in the plan of hours of service and covered employment. Therefore, the employers don't make contributions for these things. They come from third-party insurance. But I believe the deeming does apply, because this section, Article 13.14.3, does apply to the entire article, and the deeming provision has to be applied and require the additional hours, even though the narrow plan definitions would exclude the additional hours. This has to be superimposed, even if you find the argument wasn't waived below. How could that be? Even if the collective bargaining agreement here were that this was applying to the entire article and it were purporting to change the eligibility requirements, how could it do that for the pension plan and the trustees who are not even parties to the collective bargaining agreement? Well, unfortunately, they are stuck with this bad language. They may not like it, but it is part of the collective bargaining agreement. It does define how the contributions are made by employers to the fund. It's been adopted by the trust agreement, and I believe the trustees are bound by it, even though it changes the neat definitions that they have. And doesn't it make perfect sense? Because what is workers' comp? When you get hurt on the job and you can't work, you're paid a substitute for wages. If you don't give credit for that, then you're... Not by the fund. No, not by the fund. Isn't that sort of the point here? The reason why I tell me if I'm mistaken on this, because it is a bit of an assumption I'm making, but I think it's axiomatic. The reason why CBAs like this require the employer to carry workers' comp and unemployment comp insurances is because they want to lay that off on the government. Yes. Right? Yes. Okay. So the government fulfills its obligation to the worker, and why should the pension plan take a hit as well? The pension plan has discharged its duty by making sure that if that person were injured or unemployed, the government would step in and take care of the person. Well, there's nothing in the plan that prohibits the payment by a third party that says that if the payment is made pursuant to the agreement to carry the insurance, that that's somehow excluded from covered hours of service and covered employment. And in terms of fairness, workers' comp is a substitute for lost wages. So you're really penalizing the hurt employee who got hurt on the job, can't work, by saying, well, we're going to only give you credit for the hours that are actually contributed, but we're requiring our employers to maintain this insurance and you get paid by a third party, but we don't count those hours even though that's a substitute. You would have been, had you not been hurt, you would have been working, you would have been accruing hours. So the hurt loyal employee winds up really getting hurt. From a fairness standpoint, I think it just makes perfect sense to count these hours. You're suggesting they count for the employees covered by this collective bargaining agreement. Isn't that kind of anomalous for a multi-employer plan where the whole point is to have consistent benefits that are provided by the plan across multiple employers? Well, I'm not saying it would only apply to one employee. It would apply to the category of any worker who's been hurt on the job. Or in this case, an industry plan that deals with... All right, so there's 500 people working at a plant. There's a terrible accident. All 500 of them are injured on January 10th. They all get disability insurance. And all the hours for the rest of the year, they would have worked. The meter is running, so to speak, against the pension plan for the remainder of the year. But wouldn't it be the same if they weren't hurt? The meter would still be running. They'd still be accruing hours for all those hours. And the company for which they work will be getting their labor. Yes. And making contributions to the plan. Right, as they should do in exchange for their labor. Right. But you want the company and the plan, which is the collection of companies that pay into the plan. They're going to be getting no labor, but they're going to be footing the bill every step of the way while these folks are unemployed and or disabled. Well, no, they're not footing the bill because the insurer is footing the bill. And they've been paying... No, they're not footing the bill for those payments, but they're footing the bill in terms of having obligations under the pension plan. Well, the employers are paying for the insurance, not the plan. So I don't see how the plan would be hurt. The plan wouldn't be hurt, and then everybody would be getting what they're supposed to get, whether they were hurt or not. Wouldn't the plan be hurt because the unemployed or disabled workers would be collecting benefits under the plan? Because they'd be eligible because of the hours that you want us to count while they're out of work. Yes, but I'm making a fairness argument that that makes sense from a fairness standpoint because Mr. Hansen didn't get hurt, you know, the right fall of the zone. He fell off a ladder. Sure. And he'll never work again. You're saying we apply to some of those employees and not other employees who are covered under the same multi-employer plan because the eligibility requirements you're saying can be changed. Eligibility requirements for benefits under the plan could be changed by a particular collective bargaining agreement between a union and a given employer who happens to be party to that plan. I'm sorry. I'm not really following your logic, Your Honor, because the multi-employer plan here has been entered into by a multitude of employers who have signed on to the collective bargaining agreement. So it wouldn't just apply to, you know, the painters or, you know, different groups. It would apply to all the employers who signed on to the collective bargaining agreement. Are you saying that the universe of folks who are party to the plan in question here is the same universe that's party to this collective bargaining agreement where you are suggesting a particular provision changes the eligibility requirements of the plan? Yes, exactly. And that may not be what the parties intended because they created these definitions in the plan, but I do believe they're stuck with this language, which does change the eligibility. That is the exact point of the appeal. I just want to address quickly. I'm not sure I followed that. As I understood Judge Krause's question, and she'll correct me if I'm wrong, she's asking whether or not the same universe of people are governed by the multi-employer pension plan as are covered by the CBA. And I thought that was an obvious no, but I thought I just heard you say yes. Okay. Well, I'm thinking about it as you ask. Why do you think it's an obvious no? Maybe that would help me answer your question. I guess I'm making the assumption that in a typical multi-employer pension plan situation, there would be a veritable conjuries of CBAs out there. That's sort of the whole point of an MPPE is to spread the risk as broadly and deeply as you possibly can. You know a lot more about ERISA than I do, I'm sure. I believe that's not correct, and Ms. Snitter could probably comment on it. My impression is there's one collective bargaining agreement that's signed onto by all the various employers, and the only thing that changes among that whole universe is maybe pay rates. All right. Since we're not sure, we'll get supplemental letters from both of you on that. Okay. Yes. And I just quickly want to address the double-counting issue, which is also on your mind clearly. Excuse me. Ms. Snitter admitted that the vacation pay is a fringe benefit, and if you read the appellee's brief, they cite the section of the collective bargaining agreement on fringe benefits and refer to vacation as a fringe benefit based on $1 per hour worked. So if that's true, there's no double-counting. If this is a fringe benefit that is being paid on top of wages, then Mr. Hansen deserves credit for the pay, and it doesn't violate the double pay. Just like if you were an employee and you're getting paid an hourly wage and you're also getting paid vacation time, those hours count. But the other point I just wanted to make briefly is I don't see any basis for the fallback position of you take the hourly rate of $30 an hour or whatever it is and divide that by the vacation pay. That doesn't make any sense at all to me. Doesn't that come from the regulations, right, from the CFR? I don't believe that there's any basis in the plan for that. But, excuse me, one last thought I just want to leave you with from my brief, on the applying the deemed provision of the collective bargaining agreement, there's a section of ERISA. Section 1104A, which basically says that a plan administrator only has to follow the language in the plan to the extent that it's consistent with the policy of ERISA and the ERISA rules and regulations. So I believe that provision applies here and that's why the trustees should have not stuck to their rigid definitions and they keep coming back, well, employers don't pay for unemployment comp or workers comp, therefore it's not hours in covered employment. Well, that's their neat little definitions. But ERISA, section 1104A, requires the trustees not to have blinders on and not to just stick to those little definitions. They have to look beyond that and look at this deemed provision in the collective bargaining agreement under 29 U.S.C. 1104A. Thank you, Mr. Berman. Thank you, Ms. Smitter. We'll take the matter under advisement.